Edward 0. Provenzano, J.
The plaintiff, Town of Greece, commenced' this action by serving a summons and verified complaint upon the defendant, Urban Development Corporation-Greater Rochester, Inc., (hereinafter referred to as “ U. D. C.”).[1] The summons 'and verified complaint are dated September 18, 1974. On September 19, 1974, plaintiff made application for a show cause order to Hon. Clarence H. Brisco, Justice, Supreme Court. The order was signed and made returnable Spetember 25,1974. Justice Brisco, however, denied plaintiff’s application for a temporary restraining order, which was also 'asked for by plaintiff at that time. The denial being based on Justice Brisco’s finding that “ from a reading of the papers submitted * * # the plaintiff’s right to ultimate relief is in doubt ”. (Decision of Brisco, J., Sept. 19,1974, p. 2.)
This court, in addition to reading the parties’ submitted papers, has also had the benefit of listening to counsels’ oral arguments on September 25, 1974. Upon careful review, this court is of the opinion that plaintiff is not entitled to the drastic remedy of a preliminary injunction.
The court’s reasons follow: I find that the plaintiff has not met its burden of proof. The plaintiff has failed to show that it is clearly entitled to the ultimate relief demanded by it. (CPLR 6301.) Before a court can grant a preliminary injunction, the plaintiff must establish a “ clear right ” to that relief. (Park Terrace Caterers v. McDonough, 9 A D 2d 113; People v. Canal Board, 55 N. Y. 390.)
Upon careful consideration of the plaintiff’s arguments relative to its rights under the Executive Law and the Town Law, this court finds that that legislation cannot override the clear command of the New York State Urban Development Corporation Act. (L. 1968, ch. 174, § 1.)
The plaintiff contends in paragraphs 8 and 13 of its complaint that article 18 of the Executive Law gives it, and it alone, the power to enforce the State Building Code, and that therefore it has the right to inspect the project and to supervise the construction of a “ U. D. C.” project. Both parties 'agree that a U. D. C. project must comply with the State Building Code.
*377 That “ U. D. C.” is an agency of the State is clear from a reading of the New York State Urban Development Corporation Act (§ 4, subd. [1], L. 1968, ch. 174, § 1) “ There is hereby created the New York state urban development corporation. The corporation shall he a corporate governmental agency of the state ” (emphasis supplied).
Furthermore, the New York State Urban Development Corporation Act (§ 16, subd. [3], L. 1968, ch. 174, § 1) states, in effect, that local municipalities have no supervisory power to interfere with the construction of a U. D. C. project.[2]
While it is true that subdivision (3) of section 16 does give municipalities a “ right of inspection ” of a “ U. D. C.” project, it is clear that the right to inspect pertains only to a finished project. The final sentence of the above-mentioned subdivision indicates that the inspection is for the benefit of the project’s “ occupants ”.[3]
It is the opinion of this court that the Legislature was fully cognizant of the powers which municipalities were given to enforce the State Building Code pursuant to article 18 of the Executive Law. That legislation was ‘ ‘ on the books ’ ’ in 1968 when the “ U. D. C.” act was passed. Logic thus dictates that “ U. D. C.” projects were not subject to the municipalities’ normal powers pursuant to the Executive Law to regulate building within its geographical limits.
The question then becomes “ What is the Town of Greece’s remedy with respect to violations of the State Building Construction Code? ” The machinery which allows plaintiff a remedy is found in section 382 of article 18 of the Executive Law. That section provides for review of rulings under the State Building Construction Code by a State Board of Review in the Division of Housing and Community Renewal. Thus, any ruling of U. D. C. as to the effect or interpretation of the State Building Construction Code is appealable to the State Board of Review to the same extent as would be a ruling of the Building Department of the Town of Greece on a private projecj;. *378 The determinations of the hoard of review may, themselves, be reviewed in an article 78 proceeding. (Executive Law, § 382, subd. 8.)
The plaintiff contends in paragraph 9 of its complaint that section 130 of the Town Law gives it general police powers to protect the residents of the town. This is true with respect to all projects but IT. D. C. projects which are under construction.
The same observations which were made with respect to the nonapplicability of the Executive Law are relevant here. First, the Town Law was existing legislation when the “ U. D. C.” Act was passed in 1968. Second, the appeal machinery formulated by section 382 of the Executive Law gives the Town of Greece relief.
The court would like to make one further observation at this point. The “ U. D. C.” Act has caused State-wide consternation. Numerous municipalities complained of the sweeping and unilateral powers which were vested in the “ New York State Urban Development Corporation ”. Powers which left municipalities powerless to act affirmatively until a project’s completion.
Recognizing this imbalance, the Legislature in 1973 passed chapter 446 of the Laws of 1973. On approving this new legislation, then Governor Nelson A. Rockefeller, stated: “ The bill bars the Urban Development Corporation from affirming a plan for a residential project to be located in a town or incorporated, village if the local governing body of such town or village files with the corporation formal written objections to the project within 30 days after the public hearing held on the project or within 30 days after June 1, 1973, whichever date is the later * * * The impact of this bill will be to channel UDC’s residential activities into the cities, where its powers and abilities will not be affected, and into towns and villages whose governing bodies do not formally oppose a UDC residential project. Except to the extent that towns and incorporated villages are empowered to prevent UDC from affirming plans for residential projects, UDC’s existing authority to waive compliance with local zoning and other local laws and regulations will be unimpaired. ’ ’ (N. Y. Legis. Annual, 1973, p. 306; emphasis supplied.)
Two matters are worth commenting upon. One, the new legislation is not retroactive, and, two, the “ U. D. C.’s ” freedom from local interference is otherv. ise reaffirmed. It is clear that subdivision 5 of section 15 of the New York State Urban Development Corporation Act (L. 1968, ch. 174, § i) was passed in order to specifically cope with such issues as presented in the *379 instant lawsuit. The legislation not being retroactive (the instant project having been affirmed by the board of directors of U. D. C. on November 29,1972, and the Town of Greece having been so notified on December 7, 1972), the former unilateral powers of TJ. D. C. prevail with respect to this project.
The court has considered the plaintiff’s other arguments and finds that they also do not establish a ‘[1] clear right ” to a preliminary injunction.
Accordingly, on the facts alleged in plaintiff’s complaint and on the applicable law, this court finds that plaintiff’s motion should be denied.
Plaintiff’s motion is denied without costs.

. The proper name of the defendant should be “ U. D., C.-Greater Rochester, Inc.” The project here in question is owned, operated and controlled by the New York State Urban Development Corporation, and should properly be a defendant in this action.

. “No municipality shall have power to modify or change the drawings, plans or specifications * * * nor to require that any person * * * employed on any such work shall perform any such work in any other or different manner than that provided by such plans and specifications, nor to require that any such person * * * obtain any other or additional authority, approval, permit or certificate

. “ The foregoing provisions shall not preclude any municipality from exercising the right of inspection for the purpose of requiring compliance by any such project with local requirements for operation and maintenance, affecting the health, safety, and welfare of the occupants thereof” (emphasis supplied).